THOMAS, Judge.
B.R.G. (“the father”) appeals from a judgment of the Elmore Juvenile Court finding A.E.G. (“the child”) dependent and awarding custody of the child to A.L.M. (“the maternal grandmother”) and J.M. (“the maternal grandfather”) (collectively hereinafter sometimes referred to as “the maternal grandparents”). We affirm.
On January 29, 2009, G.L.M. (“the mother”) petitioned the juvenile court for an ex parte custody award and a temporary restraining order, claiming that the father had removed the child, who was then two years old, from the parties’ residence, that the location of the child was unknown to the mother, that the father was abusive and was, therefore, unfit to care for the child, and that the mother feared for the safety of the child. On the same day, the mother also filed a “petition for custody and child support,” in which the mother requested that the juvenile court award the mother “sole, physical care, custody and control” of the child, child .support, and an attorney fee, and order the father to have no contact with the mother or the child. The juvenile court granted the mother’s ex parte petition on the same day it was filed, awarding the mother temporary custody of the child and restraining the father from any contact with the mother or the child.
In response to the mother’s petitions, the father, acting pro se, filed a petition in the juvenile court alleging that the child was dependent. The father filed his complaint using a standard form provided by the juvenile court. As bases for dependency, the father checked the lines on the form alleging that the child was “without a parent or guardian able to provide for the child’s support, training or education,” that the child’s “custody is the subject of controversy,” that the child was “physically, mentally, or emotionally abused by the child’s parents ... or [that the child was] without proper parental care and control necessary for the child’s well being because of the faults or habits of the child’s parents ... or their neglect or refusal, when able to do so, to provide [for] them,” and that the child was “in immediate or threatened danger of physical and/or emotional harm.” In his petition, the father alleged that the mother was abusing prescription drugs, was experiencing hallucinations, and was suicidal.
On February 3, 2009, acting through counsel, the father moved the juvenile court to order the mother to submit to a hair-follicle drug screen. The juvenile court granted the father’s motion, ordering the mother to submit to a drug screen. The mother’s drug screen returned a positive result for methamphetamine. The father also submitted to a drug screen; the father tested negative for all screened drugs.
On February 3, 2009, the juvenile court held a hearing, and, on February 5, 2009, it entered an order setting aside its ex parte order'that had awarded custody of the child to the mother. In its order, the juvenile court awarded the father custody of the child, subject to supervision by the paternal grandmother, pending the final hearing. The juvenile court awarded the mother visitation supervised by the maternal grandmother. The juvenile court also restrained the mother and the father from communicating with each other.
*139 On February 5, 2009, the mother moved the trial court to continue the case, alleging that she had been committed to a mental-health institution by an order of the Elmore County Probate Court.[1] On February 16, 2009, the maternal grandparents filed a motion to intervene in the case and a petition for temporary custody of the child. In their petition, the maternal grandparents alleged that the child was dependent. In support of their allegation of dependency, the maternal grandparents alleged that the mother had been involuntarily committed to a mental-health institution by the probate court and that the father was currently out on bond for a pending domestic-violence charge that had been brought by the mother. The maternal grandparents requested that the juvenile court award the maternal grandparents temporary custody of the child pending the outcome of the case. The father responded to the maternal grandparents’ motion to intervene and petition for temporary custody, denying that the child was dependent. In his response, the father admitted that he had a pending domestic-violence charge; however, he stated that the charge was from an incident that had occurred in 2004 and that the father had not been convicted. The father also denied that the maternal grandparents were the fit and proper persons to have custody of the child. The juvenile court subsequently entered an order granting the mother’s motion to continue, granting the maternal grandparents’ motion to intervene, and denying the maternal grandparents’ petition for temporary custody.
In August 2009, the father filed an “amended petition for custody,” asserting that he was the fit and proper person to have custody of the child and that the mother was employed and was capable of paying child support. In his amended petition, the father requested that the juvenile court award him custody of the child and order the mother to pay child support. The mother responded to the father’s amended petition, alleging that the father had committed acts of domestic violence against her and that the child had received injuries while in the temporary care of the father. The mother also alleged that she was the fit and proper person to have custody of the child and requested that the juvenile court award her' custody of the child. The maternal grandparents also answered the father’s amended petition for custody, requesting that the juvenile court award them custody of the child, award the mother visitation, and award the father supervised visitation. The mother and the maternal grandparents jointly filed a motion to have the father held in contempt, alleging that the father had failed to follow the juvenile court’s orders by refusing to allow the mother and the maternal grandparents to exercise their visitation with the child.
On September 28, 2009, P.G. (“the paternal grandmother”) filed a petition seeking to intervene in the ease and alleging that the child was dependent. The paternal grandmother alleged that she was “in fear of [the child’s] safety and well-being” and requested that the juvenile court award joint legal custody to the paternal grandmother and the father and primary physical custody to the paternal grandmother. At the final hearing, the juvenile court granted the paternal grandmother’s motion to intervene.
*140 Following a hearing, the juvenile court entered a judgment finding the child dependent. With respect to the father, the juvenile court based its determination of dependency on the allegation of domestic violence. In its judgment, the juvenile court awarded the maternal grandparents custody of the child, awarded the mother visitation, and awarded the father supervised visitation. The judgment provided that the father would have standard visitation when the child turned five years old. The juvenile court’s judgment did not address the issues of child support or the father’s alleged contempt.
The father subsequently filed a motion requesting that the juvenile court reconsider its judgment, a motion to stay execution of the judgment pending the resolution of the postjudgment motion, and a motion requesting that the juvenile court address the outstanding issues of contempt and child support. On October 27, 2009, the juvenile court entered an order denying the father’s postjudgment motion and motion to stay, denying the contempt motion that had been jointly filed by the mother and the maternal grandparents, and referring the issue of child support to the juvenile-court referee.[2] On January 11, 2010, the juvenile court entered an order requiring the mother and the father to pay child support to the maternal grandparents. The father subsequently appealed to this court.
The father first argues that the juvenile court lacked subject-matter jurisdiction over the case. The mother initiated the instant case by filing a petition for an ex parte custody order, alleging that the child was in danger of harm while in the custody and control of the father. Section 12-15-138, Ala.Code 1975, provides that
“[t]he juvenile court, at any time after a dependency petition has been filed, or on an emergency basis, may enter an order of protection or restraint to protect the health or safety of a child subject to the proceeding.”
(Emphasis added.)
Thus, the mother’s petition for an emergency ex parte order, in which she alleged that the child was in danger of immediate harm, properly invoked the emergency jurisdiction of the juvenile court under § 12-15-138.
Thereafter, the father filed a dependency petition alleging, among other things, that the mother had abused the child and that the child was without proper parental care and control — allegations that, if proven, could support a finding of dependency. See § 12-15-101(8), Ala. Code 1975. Section 12-15-114(a), Ala. Code 1975, provides, in pertinent part, that “[a] juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged to have committed a delinquent act, to be dependent, or to be in need of supervision.”[3] Thus, the allegations in the father’s petition were sufficient to invoke the dependency jurisdiction of the juvenile court. Although the father later amended his petition to assert only claims for custody and child support, the maternal grandparents filed a motion to intervene and a petition *141 alleging that the child was dependent before the father’s amendment of his petition. Thus, the juvenile court still had jurisdiction over the father’s original dependency petition at the time the maternal grandparents intervened. Because the juvenile court had subject-matter jurisdiction over the case at the time it granted the maternal grandparents’ motion to intervene and because their petition clearly alleged that the child was dependent, the maternal grandparents’ petition properly invoked the juvenile court’s dependency jurisdiction over the case. See § 12-15-114(a) (“A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged ... to be dependent .... ”); § 12-15-102(8), Ala.Code 1975 (defining a dependent child). The father’s later amendment of his petition, removing his allegations of dependency and, instead, asserting only claims for custody and child support did not act to terminate the juvenile court’s subject-matter jurisdiction over the case because the juvenile court had before it at that time the maternal grandparents’ petition alleging dependency.
The father next argues that the juvenile court’s determination that the child was dependent was not supported by clear and convincing evidence.[4],[5]
“ ‘A finding of dependency must be supported by clear and convincing evidence. § 12-15—65(f)[, Ala.Code 1975] [now 12-15-311(a), Ala.Code 1975]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).’ ”
L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala.Civ.App.2008) (quoting J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004)).
The mother testified that the father'had physically and verbally abused her multiple times during the parties’ relationship. The mother entered into evidence photographs that showed bruises and marks that the mother alleged were the result of an incident during which, according to the mother, the father shoved a stuffed animal down the mother’s throat and choked her. According to the mother,, the father had also once placed a pillow over her face, preventing her from breathing, while-she was holding the child. The maternal grandmother also testified that the father had verbally and physically abused the mother. The father disputed the mother’s testimony, denying that he had ever abused the mother. A.S., the father’s ex-wife with whom he shares a child, and C.H., A.S.’s mother, both testified that the *142 father has never shown any violent tendencies and that he provides good care for A.S. and the father’s child when he has visitation. The father also presented the testimony of Martha Ellis, a licensed professional counselor. Ellis testified that she had held six sessions with the father to evaluate anger-management strategies. According to Ellis, the father did not exhibit any behavior or tendencies that would indicate that the father was a violent person.
The maternal grandmother testified that the child had returned from visitation with the father with multiple bruises, which the maternal grandmother attributed to a lack of supervision while the child was at the home of the paternal grandmother. The father explained that the child twice injured herself during his visitation periods — once when the child tripped and hit her head on the corner of a bed and once when a can of food fell off a shelf and onto her toe — and that both injuries were accidental.
The evidence pertaining to the issues whether the father had abused the mother or whether he had provided inadequate supervision over the child was disputed.
“ ‘ “Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court..."' Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). ‘When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.’ Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). ‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).”
Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). In this case, the trial court had evidence before it that, if believed, would support a determination that the child was dependent. Because this court is prohibited from reweighing the evidence on appeal or determining the credibility of witnesses, we cannot conclude that the juvenile court erred when it determined that the child was dependent; therefore, the juvenile court’s judgment is due to be affirmed.[6]
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. The maternal grandparents twice initiated proceedings in the probate court, seeking to have the mother committed to a mental-health institution. The first petition, initiated on January 28, 2009, was denied by the probate court. The second petition, filed on February 9, 2009, was granted, resulting in an order committing the mother to Greil Memorial Psychiatric Hospital for a minimum of 150 days.

. After tire juvenile court entered its October 27, 2009, order, the father appealed to this court. We dismissed the father’s appeal, concluding that it had been taken from a non-final judgment.

. Section 12-15-114(a) further states that ’’[a] dependency action shall not include a custody dispute between parents.” However, both the father's and the maternal grandparents’ petitions clearly state allegations of dependency. Therefore, this case is not a pure custody dispute between parents. Instead it squarely presents the juvenile court with the question whether the child is dependent.

. The mother has not appealed from the juvenile court’s judgment finding the child dependent; therefore, the issue whether the child would be dependent in the mother's care is not at issue on appeal, and we need only address the father's argument that the child is not dependent because, he says, he is a fit and capable parent.

. The father argues that the juvenile court determined that the child was dependent based on a "mere allegation” of domestic violence. Although, the juvenile court did state in its judgment that the father was unfit to have custody of the child because of "the alleged domestic violence,” it is clear from reading the entire judgment that the juvenile court found that the evidence was sufficient to support the conclusion that the father had been the perpetrator of domestic violence.

. The father's final argument is based on an assumption that the child was not dependent. Because we hold that the juvenile court did not err in finding the child dependent, we need not address the father's argument concerning the application of Ex parte Terry, 494 So.2d 628 (Ala.1986), to the facts of this case.