62 So.3d 540 (2010)
G.H.
v.
CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES.
2090431 and 2090432.
Court of Civil Appeals of Alabama.
November 12, 2010.
*541 Jayme Kirkland, Anniston, for appellant.
Sharon E. Ficquette, chief gen. counsel, and Kimberly J. Dobbs, staff atty., Department of Human Resources, for appellee.
PER CURIAM.
G.H. ("the mother"), the mother of E.B. and C.B. ("the children"), two minor children made the subject of proceedings brought by the Cleburne County Department of Human Resources ("DHR") in the Cleburne Juvenile Court, appeals from two judgments of that court determining the children to be dependent and awarding custody of the children to their father, J.R.B. ("the father").
In November 2009, DHR filed petitions in the juvenile court alleging, in pertinent part, that the children were dependent because, DHR averred, the mother and her current husband were using the illicit drug methamphetamine and were caring for the children under the influence of that drug; it was also averred that domestic violence had occurred in the mother's home in the presence of the children. Pursuant to a shelter-care order, pendente lite custody of the children was placed with DHR pending a trial on the petitions. After a trial, the juvenile court entered two judgments declaring the children to be dependent and awarding custody of the children to the father, a Georgia resident who had appeared in the actions and requested custody. The mother's postjudgment motions were automatically denied by operation of Rule 1(B), Ala. R. Juv. P., prompting her appeals (which were consolidated by this court ex mero motu); because the juvenile-court judge certified the record as adequate for appellate review, we have appellate jurisdiction pursuant to Rule 28(A)(1), Ala. R. Juv. P. The mother raises four issues: she contends that the juvenile court's judgments are void for lack of subject-matter jurisdiction, that the judgments are not supported by the evidence, that the disposition was not in the best interests of the children, and that the mother's visitation was impermissibly made subject to the father's discretion.
Many of the legal principles governing our examination of the juvenile court's judgments were summarized in J.W. v. C.H., 963 So.2d 114 (Ala.Civ.App.2007), including the standard of review applicable to the bulk of the issues presented:

*542 "`In matters concerning child custody and dependency, the trial court's judgment is presumed correct on appeal and will not be reversed unless plainly and palpably wrong.' Ex parte T.L.L., 597 So.2d 1363, 1364 (Ala.Civ.App.1992); see also Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). Additionally, in Ex parte Anonymous, 803 So.2d 542 (Ala.2001), the Alabama Supreme Court stated:
"`The ore tenus rule provides that a trial court's findings of fact based on oral testimony "have the effect of a jury's verdict," and that "[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust." Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).'
"803 So.2d at 546.
". . . .
". . . [B]ecause the juvenile court received ore tenus evidence and observed the witnesses' demeanors, this court cannot reverse the juvenile court's judgment unless it is unsupported by the evidence so as to be clearly and palpably wrong. Everett v. Everett, 660 So.2d 599, 602 (Ala.Civ.App.1995)."
963 So.2d at 119-20. Of course, the mother's subject-matter-jurisdiction contention invokes de novo review. See A.C. v. C.C., 49 So.3d 726, 731 (Ala.Civ.App.2010).
The record reveals that DHR received a child-abuse-and-neglect report on August 4, 2009, as to the children to the effect that the mother and her husband were using methamphetamine.[1] During DHR's subsequent investigation, the mother admitted that both she and her husband were currently using methamphetamine, that she believed that her husband was manufacturing methamphetamine, and that she had purchased cold medicines for her husband to use in manufacturing the drug; further, she stated that her husband was no longer welcome in the family home and that she had had to use chairs to brace doors in an effort to block his regular efforts at breaking and entering the homeefforts made in the presence of the children. The children were then placed under an out-of-home safety plan pursuant to which a maternal aunt would care for the children. The father, who had received visitation pursuant to a judgment divorcing him from the mother, continued to exercise visitation with the children under DHR's safety plan; he sought custody of the children once DHR had filed its petitions.
DHR recommended that the mother complete a drug assessment, which she did, and she began attending weekly support-group meetings; subsequently, she completed a 28-day inpatient drug-treatment program as well. However, the mother did not initiate divorce or protection-from-abuse proceedings as to her husband, nor did she report him to police or prosecuting authorities for any criminal activity;[2] further, DHR's investigator observed *543 at trial that the mother had no income or job, and she and DHR's caseworker currently assigned to the case both opined that the mother had not, as of December 2009, received services for a sufficient period so as to warrant return of the children to her home in light of her methamphetamine-use history (which, the mother admitted at trial, had resumed in June 2008, soon after the deaths of her grandmother and mother). It was further revealed at trial that the mother, at the time of trial, was the subject of pending felony charges to the effect that she had conspired to manufacture methamphetamine by buying over-the-counter cold medicines. The mother's principal drug-treatment counselor, while praising the mother's progress in that treatment and opining that DHR's continued physical custody of the children was unnecessary, testified that the mother's remaining drug-free during a span of 18 months would make a significant difference in the likelihood that the mother would not relapse into methamphetamine use and that the mother had not been "clean" for a "substantial amount of time" as of trial.
The father testified at trial that he lived in a four-bedroom, two-bathroom residence in Haddock, Georgia, with his new wife and their two-and-a-half-year-old daughter and that he was purchasing the residence while working for a natural-gas piping contractor, a job he had held during the preceding 3 calendar years in a field where he had worked for the preceding 15 years. The father testified that he and the mother had divorced approximately four years earlier and that since that time he had regularly exercised monthly weekend visitation with the children and two weeks' worth of visitation during summers, either as scheduled or on a "make-up" basis. The father also offered, and the juvenile court accepted into evidence, photographs of his residence depicting the children's current sleeping quarters during their visitation periods with the father in Georgia. At the conclusion of testimony, the father agreed that if the children were placed in his home, he would allow the children to visit with the mother's other child, M.C., their half sister, who was apparently destined to remain in foster care in the home of the father's brother and sister-in-law.[3]
The father admitted to having used illegal drugs in the past, but he testified that he ceased his usage in 2004 when he entered a four-month in-house drug-rehabilitation program in Albany, Georgia, that he subsequently completed. Although the father admitted on cross-examination that a test of his urine on a previous hearing date had been deemed invalid because of his having excreted an insufficient amount of discolored urine, results of a blood test administered that same day and admitted on redirect examination showed the father not to have ingested drugs. In addition, at trial, the mother's counselor answered in the affirmative a hypothetical question posed by counsel for the father concerning whether, if someone were "off drugs" for approximately five years, had held a long-term job, had cared for a two-and-a-half-year-old child in his home with no problems, and was financially supporting children outside his home and visiting with them regularly, that person could properly be deemed "stable and successful in [his] sustained rehabilitation" and in "sustained recovery."
At the close of the trial, the juvenile-court judge remarked that the mother's home "continue[d] to cause [him] a lot of *544 concern." Although the judge "applaud[ed] [the mother] for all [she had] accomplished," he observed that, in his experience, "for anybody to stay straight is really a lot when it comes to meth." In the juvenile-court judge's view, the mother's progress had been "short term," and he "want[ed] to see a longer pattern established" before allowing the children to return to the mother's home.
We first consider whether the juvenile court properly exercised subject-matter jurisdiction as to the dependency petitions, a question that also involves the correctness of the dependency determinations contained therein. The pleadings commencing the dependency cases involving the children were not filed by the father or another family member; rather, they were filed by DHR acting as parens patriae, and they were endorsed by the juvenile-court intake officer, pursuant to § 12-15-120(b), Ala.Code 1975, as being within the subject-matter jurisdiction of the court and as amounting to filings in the best interests of the public and the children. Further, the juvenile court in this case found the children dependent. This case is thus not parallel to cases such as E.H. v. N.L., 992 So.2d 740 (Ala.Civ.App. 2008), cited by the mother, or K.C.G. v. S.J.R., 46 So.3d 499 (Ala.Civ.App.2010), in which a child's relative asserts a child's dependency in an initial pleading but, at trial, fails to prove the child's dependency. Finally, to the extent that the mother seeks to contend that the dependency determinations are not supported by the evidence, we conclude from the foregoing facts of record that (a) the mother has a recurring addiction to methamphetamine that has lasted for the preceding decade; (b) the mother had managed to remain drug-free for only a few weeks before trial after completing a drug-treatment program; (c) the mother is facing felony drug charges; and (d) DHR representatives do not believe that the mother is yet able to resume custody of the children. From that evidence, and in light of Ala.Code 1975, § 12-15-102(8)a.6., which includes within the definition of a "dependent child" a child "[w]hose parent . . . is unable or unwilling to discharge his or her responsibilities to and for the child" (emphasis added), the juvenile court could properly conclude, as it did, that the children were dependent notwithstanding the mother's protestations of fitness.
The special writing concurring in the result to affirm suggests that the Alabama Supreme Court, in deciding Ex parte L.E.O., 61 So.3d 1042 (Ala.2010), has ruled in a manner consistent with the juvenile court's judgment in this case, but posits that the supreme court has erred in so ruling and that that court should overrule that opinion. However, the proposition accepted by a majority of the supreme court in Ex parte L.E.O.that a child with a fit noncustodial parent willing to assume custody can properly be declared dependent is consistent with both J.J. v. J.H.W., 27 So.3d 519 (Ala.Civ.App.2008), and Floyd v. Alabama Department of Human Resources, 550 So.2d 980 (Ala.Civ.App.1988), aff'd, 550 So.2d 982 (Ala.1989), in which this court (and, in Floyd, the Alabama Supreme Court as well) affirmed judgments determining children to be dependent and awarding physical custody of those children to their fathers.
The mother also contends that the juvenile court erred in its custody disposition. Contrary to the mother's intimations regarding the prevailing standard in modification-of-custody proceedings involving parents, under Ala.Code 1975, § 12-15-314(a)(3)c. and (a)(4), a juvenile court is empowered, in disposing of the custody of a dependent child, to "[t]ransfer legal custody to . . . [a] relative" or to "[m]ake any *545 . . . order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child." In this case, there was ample evidence adduced to the effect that (a) the father had remained drug-free for the preceding five years before trial, (b) the father had maintained a steady job and had acquired a suitable home to provide for the material needs of the children, (c) the father had visited with the children regularly since the mother and the father had divorced five years previously, and (d) the father was willing to accept custody of the children and to allow them to visit with their half sister (who apparently remains in foster care). Although the mother argues that the father has a "history" of domestic violence and has not received counseling as to that issue, the record shows no indication that that violence was directed at the children, and the father testified that there had been mutual acts of violence between the father and the mother during their marriage. The juvenile court could properly have concluded, as it did, that custody of the children should be awarded to "a willing, fit, and able relative" such as the father. Ala.Code 1975, § 12-15-314(a)(3)c.
Finally, we note the mother's contention that her visitation rights have been improperly limited. The juvenile court, in its judgment, stated that the mother would have "visitation set under such terms and conditions as available through her juvenile case involving [M.C.,] her other minor child who is not the child of [the father]," and directed the father "to cooperate with the implementation of said visitation." The court further noted its "intent . . . to provide such precautions and protections as are necessary to provide for the safety of the [children] but to also allow the visitation to expand as the mother's progress with services continues."
Although the mother contends that that provision mandates that the mother's visitation rights with the children are "to be determined by the [individualized-service-plan] team," the record does not contain a copy of any of the pleadings, orders, or judgments in the "juvenile case involving" M.C. by which we may assess whether the mother's visitation is impermissibly constrained by the whims of an individualized-service-plan team, the whims of the father, or both. The mother, as the appellant, has the burden of ensuring that the record contains sufficient evidence to warrant reversal, see Kimbrough v. Kimbrough, 963 So.2d 662, 665 (Ala.Civ. App.2007), and we cannot properly predicate error based upon allegedly improper provisions of a judgment we cannot find in the record. Even were the judgment pertaining to M.C. present in the record, and even were that judgment to provide for visitation as permitted by a third-party entity, such as an individualized-service-plan team constituted under administrative authority and including the mother herself, see Ala. Admin. Code (DHR), Rule 660-5-47-.04(3)(a), we would venture far afield of our holdings in K.B. v. Cleburne County Department of Human Resources, 897 So.2d 379 (Ala.Civ.App.2004), and other cases proscribing custodians from exercising absolute veto powers over visitation if we were to hold, as the mother would have us hold, that the juvenile court did not have the discretion in this case to allow gradual expansion of the mother's visitation upon a showing of her continued demonstrated progress toward sobriety.
Based upon the foregoing facts and authorities, the judgments of the juvenile court are due to be affirmed.
2090431AFFIRMED.
2090432AFFIRMED.
*546 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing.
MOORE, Judge, concurring in the result.
This appeal arises from a judgment declaring E.B. and C.B., the two children of G.H. ("the mother") and J.R.B. ("the father"), dependent and awarding their custody to the father.[4] The mother argues that the Cleburne Juvenile Court ("the juvenile court") lacked subject-matter jurisdiction over what she describes as a custody dispute between the parents and, therefore, that the juvenile court erred in transferring custody of the children to the father on the grounds of their dependency.
Generally speaking, juvenile courts have subject-matter jurisdiction over actions in which a child is alleged to be dependent. Ala.Code 1975, § 12-15-114(a).[5] However, a "dependency action shall not include a custody dispute between parents." Id. In Ex parte T.C., [Ms. 2090433, June 18, 2010] ___ So.3d ___ (Ala.Civ.App.2010), this court interpreted § 12-15-114(a) as evidencing a legislative intent that "the juvenile courts of this state should no longer be deciding custody disputes except insofar as their resolution is directly incidental to core juvenile-court jurisdiction. . . ." ___ So.3d at ___. Dependency is a matter of core juvenile-court jurisdiction. Thus, a juvenile court retains subject-matter jurisdiction to resolve a dependency petition filed by a third party, such as the Department of Human Resources, even if both parents contest the custody of the child in the same proceeding. See, e.g., B.R.G. v. G.L.M., 57 So.3d 137 (Ala.Civ.App.2010). Based on the foregoing, I agree that the juvenile court had subject-matter jurisdiction over this dependency action.
Once the dependency jurisdiction of the juvenile court is properly invoked, the juvenile court must hold an evidentiary hearing to determine whether clear and convincing evidence proves the dependency of the child. K.C.G. v. S.J.R., 46 So.3d 499, 501 (Ala.Civ.App.2010). In dependency cases, a juvenile court has jurisdiction to transfer custody of a child if, and only if, the child is determined to be dependent at the time of the disposition. See V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App. 2008) ("`[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.'" (quoting K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379, 389 (Ala.Civ. App.2004) (Murdock, J., concurring in the result))). If the juvenile court determines *547 that clear and convincing evidence does not support the allegations of dependency, the juvenile court must dismiss the petition, Ala.Code 1975, § 12-15-311(b), and it cannot enter any order affecting the custody of the child. See Ex parte K.S.G., 645 So.2d 297, 300 (Ala.Civ.App.1992). But, if the child is found dependent based on clear and convincing evidence, the juvenile court may make any order affecting the custody of the child that the juvenile court determines serves the welfare and best interests of the child. Ala.Code 1975, § 12-15-314(a)(4).
The mother argues that the children were not dependent at the time the judgments awarding the father custody of the children were entered because, she says, she had adequately overcome her substance-abuse and domestic-violence problems so as to be able to safely parent the children. The evidence at trial indicated that the mother's husband had been imprisoned since September 2009 and that, in the words of the mother, he "would not be getting out." The Cleburne County Department of Human Resources ("DHR"), the entity that filed the dependency petitions in this case, presented no evidence indicating that the mother had engaged in any domestic violence since her husband's imprisonment, and DHR did not raise any concern that the mother would resume engaging in domestic violence in the absence of her husband. DHR focused its evidence almost entirely on the mother's incomplete recovery from her substance-abuse problem. In its oral pronouncements following the trial, the juvenile court stated its belief that, although the mother had made much progress toward conquering her substance-abuse problem, she was still too early in the recovery process to safely assume custody of the children. That belief rested on evidence indicating that the mother, who was 32 years old at the time of trial, had abused illegal drugs since she was 19 or 20; that she had lost custody of her children once before, years earlier, due to that same problem, which she briefly overcame; that the mother had relapsed in June 2008 and had regularly used methamphetamine through August 2009; that the mother had abused alcohol following the children's being removed from her custody; that the mother had completely abstained from substance abuse for only about 2 months before trial, part of which occurred during her participation in a 30-day inpatient drug-rehabilitation program; and that, according to the mother's substance-abuse counselor, the mother's recovery was not yet assured and she would require monitoring by DHR if she regained custody of the children. I believe that evidence alone was sufficient for the juvenile court to be clearly convinced that the mother was not yet in a position to independently and safely parent the children. See Ex parte Mclnish, 47 So.3d 767, 778 (Ala.2008) (holding that appellate courts must review factual findings that are required to be proven by clear and convincing evidence to determine whether there exists evidence in the record from which the lower court, based on its own weighing of the evidence, could have concluded that the fact sought to be proved was clearly and convincingly established).
The evidence revealed that the father had successfully overcome his own substance-abuse problems in 2004 and that he had remained committed to his sobriety since that time. The father had since stabilized; he works as a foreman on a drilling crew, he lives in a four-bedroom, two-bathroom house, he has remarried and is having his second child with his new wife, he cares on weekends for his new wife's two children from a former marriage, he fairly regularly visits with the children, and he routinely pays child support for the *548 children. That evidence supports the juvenile court's implicit finding that the father was fit and qualified to receive and care for the children and that their best interests would be served by placing them in his custody. See Ala.Code 1975, § 12-15-314(a)(3)c. (authorizing juvenile court to place custody of dependent child with relative who "is found by the juvenile court to be qualified to receive and care for the child").
However, the mother argues that that same evidence proves that the children were not dependent. The mother asserts that a child cannot be dependent if the child has a parent that is fit and willing to assume custody. The mother contends that, because the juvenile court found that the father was a fit and willing parent, it could not find the children dependent and, thus, that it did not have any jurisdiction to modify the prior divorce judgment awarding her custody.
Section 12-15-102(8), Ala.Code 1975, defines a "dependent child" as:
"a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 [, Ala. Code 1975,] or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
"2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
"7. Who has been placed for care or adoption in violation of the law.
"8. Who, for any other cause, is in need of the care and protection of the state."
The mother essentially argues that a child who has at least one fit parent willing to assume custody of the child cannot be "in need of care or supervision," one of the essential elements of dependency under § 12-15-102(8)(a).
The phrase "in need of care or supervision" first appeared in a dependency statute in 1975 when the legislature adopted the original Alabama Juvenile Justice Act ("the old AJJA"), Ala.Code 1975, § 12-15-1 et seq.; the following definition of "dependent child" appeared in the old AJJA:
"A child:
"a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
"b. Who is without a parent or guardian able to provide for the child's support, training, or education; or
"c. Whose custody is the subject of controversy; or

*549 "d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
"e. Whose parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical, or other care necessary for the child's health or well-being; or
"f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
"g. Who has no proper parental care or guardianship; or
"h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state; or
"i. Who has been abandoned by the child's parents, guardian, or other custodian; or
"j. Who is physically, mentally, or emotionally abused by the child's parents, guardian, or other custodian or who is without proper parental care and control necessary for the child's well-being because of the faults or habits of the child's parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or
"k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child; or
"l. Who has been placed for care or adoption in violation of the law; or
"m. Who for any other cause is in need of the care and protection of the state; and
"n. In any of the foregoing, is in need of care or supervision."
Ala.Code 1975, former § 12-15-1(10) (now codified at § 12-15-102(8)(a)). The phrase "in need of care or supervision" remained in the old AJJA until it was amended and renumbered as of January 1, 2009; it is now found in § 12-15-102(8)(a), a part of the new Alabama Juvenile Justice Act ("the new AJJA"), Ala.Code 1975, § 12-15-101 et seq. See supra note 5.
This court has only recently recognized that the phrase "in need of care or supervision" constitutes one of two prongs necessary for a finding of dependency. See J.W. v. N.K.M., 999 So.2d 526, 532 (Ala. Civ.App.2008) ("Subsections a. through m. of [former] § 12-15-1(10)[, Ala.Code 1975,] are all alternative bases for a dependency finding. In addition to one or more of those alternatives, in order for a child to be determined to be dependent, subsection n. must also be met. Subsection n. of [former] § 12-15-1(10) specifies that, in addition to the alternate bases for a dependency finding, a child is dependent if he or she `is in need of care or supervision.'"). Other than that recognition, neither this court nor our supreme court had ever construed the phrase "in need of care or supervision" until the supreme court issued its opinion in Ex parte L.E.O., 61 So.3d 1042 (Ala.2010). In Ex parte L.E.O., the supreme court held that
"[i]t is a reasonable interpretation of [former] § 12-15-1(10)[, Ala.Code 1975,] to require that, in determining whether a child is `in need of care or supervision,' the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child. The child is entitled to the care or supervision from those persons with the authority to take *550 appropriate actions on behalf of the child, such as, for example, to enroll the child in school, to authorize medical care for the child, and to obtain insurance for the benefit of the child. This interpretation comports with the purposes of the [new] Alabama Juvenile Justice Act, . . . § 12-15-101 et seq., Ala.Code 1975, among which are to provide children with permanency and to foster family preservation."
61 So.3d at 1047.
Based on the above-quoted excerpt from L.E.O., there are two possible ways in which the children in this case could be considered dependent. First, if both parents had legal custody of the children,[6] the juvenile court could have determined that neither legal custodian was actually providing the required care, see Ala.Code 1975, § 12-15-102(16) (providing that a legal custodian has the personal duties to protect, train, and discipline the child and to provide the child with food, shelter, clothing, education, and medical care), the mother because of her ongoing substance-abuse problem and the father because of his physical separation from the children. Second, if the mother was the sole legal custodian, see Ala.Code 1975, § 30-3-151(4) (providing that a sole legal custodian has "sole rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training"), the juvenile court could have determined that the mother was not capable of discharging those responsibilities. In either case, the children would be considered dependent despite the fact that the father, their noncustodial parent, was willing and able to properly care for and supervise them.[7]
In J.J. v. J.H.W., 27 So.3d 519 (Ala.Civ. App.2008), and Floyd v. Alabama Department of Human Resources, 550 So.2d 980 (Ala.Civ.App.1988), aff'd, 550 So.2d 982 (Ala.1989), this court affirmed judgments finding children dependent and awarding their custody to a noncustodial parent. However, in J.J., the custodial parent conceded the dependency of the children and this court expressly noted that the dependency of the children was not an issue before this court. 27 So.3d at 522 n. 1. In Floyd, the mother raised three issues regarding the correctness of a judgment finding her children dependent, awarding their custody to the children's father, and awarding her specified visitation rights. 550 So.2d at 980. None of those issues concerned whether the children could be found dependent when their noncustodial parent was fit and willing to assume their custody. Hence, neither this court, nor the supreme court on certiorari review, Ex parte Floyd, 550 So.2d at 983-84, addressed that issue. I have not found any other case in which this court or our supreme court has expressly held that a child *551 may be found dependent when the child has a fit and willing noncustodial parent ready to assume his or her custody.
Ex parte L.E.O. does not directly address that issue either. In L.E.O., the supreme court concluded that neither parent was fit and willing to assume custody of the child at issue, so the court did not have before it a noncustodial parent deemed qualified to receive and care for the child. Nevertheless, the holding in L.E.O. defining the term "in need of care or supervision" is worded broadly to encompass any situation in which a child is not receiving care from the persons legally obligated to provide it. Hence, as illustrated above, the holding in L.E.O. apparently extends to situations like the one present in this case in which a child's custodial parent has become unable or unwilling to discharge his or her parental responsibilities to and for the child and the child is not currently under the care of a noncustodial parent, although that noncustodial parent is fit, willing, ready, and able to assume the care of the child.
As noted by the dissent in L.E.O., the construction of the phrase "in need of care or supervision" applied by the majority in L.E.O. raises serious constitutional and statutory questions. 61 So.3d at 1050 (Murdock, J., dissenting). In addition to the problems identified by the dissent in L.E.O., the definition used by the supreme court now, for the first time in the history of this State, allows a juvenile court to find a child, who has a fit and willing parent ready to assume the custody of the child, dependent. The power to declare a child dependent, once exercised by the juvenile court, carries with it the authority to dispose of the custody of the child in any manner the juvenile court deems in the best interests of the child, see Ala.Code 1975, § 12-15-314(a)(3)c., to monitor the care of the child to assure the care the child is receiving meets the juvenile court's standards, see Ex parte Montgomery County Dep't of Human Res., 10 So.3d 31, 37-38 (Ala.Civ.App.2008), and to keep the custody of the child within its jurisdiction until the child attains 21 years of age. See § 12-15-117, Ala.Code 1975. Essentially, a child who is declared dependent becomes a ward of the State, subject to its supervision and control through the juvenile court. See York v. Willingham, 18 Ala. App. 59, 60, 88 So. 218, 218-19 (1920). Surely, the legislature did not intend for the State to assume and wield such awesome power over a child with a fit and willing parent, a child who does not need the State's care, protection, or supervision. Even if the legislature did intend that result, as a matter of constitutional law I believe that intent could not be carried out without violating the due-process rights of the parents and the child. For those reasons, I implore the supreme court to reconsider its decision in Ex parte L.E.O.
Until that decision is recalled or overruled, however, I am compelled to follow the decision in L.E.O. See § 12-3-16, Ala. Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals."). Thus, in this case, I have no choice other than to agree with the majority that the judgment of the juvenile court is due to be affirmed.[8]
NOTES
[1] DHR's records indicate that the mother has been involved with methamphetamine use since 2004, whereas the mother, who was 32 years old at the time of trial, testified to having used methamphetamine since she was "[p]robably 19 or 20."
[2] The mother's husband was, however, ultimately charged with having committed drug offenses, and the mother testified that she planned to seek a divorce from him because "[h]e's looking at years in prison."
[3] The appellate record contains no indication as to any permanent custodial disposition of M.C.
[4] The juvenile court also awarded the mother visitation consistent with a visitation order entered regarding the mother's other child, M.C. The mother argues on appeal that the juvenile court erred in fashioning an award of visitation that essentially grants the father complete control over her right to visit the children. However, the mother did not include the visitation order relating to M.C. in the record, so this court has no basis for determining the merits of the mother's argument. Thus, I agree with the main opinion that we cannot reverse the judgment for failing to provide the mother specific visitation rights.
[5] Section 12-15-114(a), Ala.Code 1975, is a part of the new Alabama Juvenile Justice Act ("the new AJJA"), § 12-15-101 et seq., Ala. Code 1975, that became effective January 1, 2009; the new AJJA repealed or amended and renumbered the provisions in the former Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975. Because the petitions were filed after January 1, 2009, this case is governed by the new AJJA.
[6] The record is unclear as to the exact nature of the custody the divorce judgment awarded the mother.
[7] Many noncustodial parents do not have legal custody of their children. Legal custody carries with it a personal obligation to protect, train, and discipline a child and to provide the child with food, shelter, clothing, education, and medical care. Ala.Code 1975, § 12-15-102(16). Under the interpretation advanced in Ex parte L.E.O., 61 So.3d 1042, a juvenile court can declare a child dependent even when that child has a fit and willing noncustodial parent simply because that parent does not have legal custody and is not presently providing food, shelter, clothing, education, and medical care for the child. Once a child is determined to be dependent, the juvenile court has no imperative duty to award custody of the child to the noncustodial parent; rather, it must only give that parent "preference" over potential nonrelative custodians. See Ala.Code 1975, § 12-15-314(a)(3)c.
[8] Absent the holding in Ex parte L.E.O., in order to uphold the validity of the juvenile court's judgment, see Cockrell v. Cockrell, 40 So.3d 712, 715 (Ala.Civ.App.2009), I would have construed the judgment as a proper exercise of the juvenile court's emergency jurisdiction to transfer custody of a child. See § 12-15-138, Ala.Code 1975. The evidence revealed that, due to the mother's substance-abuse problems, the safety of the children would have been imperiled by allowing the mother to exercise custody. At the close of the trial, and in the visitation terms of its judgment, the juvenile court clearly expressed its intent to award custody of the children to the father for protective purposes while the mother progressed in her recovery. In such circumstances, the juvenile court had the emergency power to place the children in the custody of the father for their protection until the father could obtain a custody judgment from a circuit court. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003) (subject to due-process constraints, appellate courts "will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court").