PITTMAN, Judge.
These appeals arise from a judgment entered in two related actions in the Shelby Juvenile Court denying petitions filed in April 2005 by C.S.S. and R.W.S. (“the maternal grandparents”), who are the maternal grandparents of T.S.W. and K.M.W. (“the children”), for termination of the parental rights of J.J. (“the mother”) and J.H.W. (“the father”) as to the children; determining the children to be dependent; and awarding custody of the children to the father subject to visitation by the maternal grandparents and the mother. Although the juvenile court initially entered an order transferring the cases to its counterpart in Jefferson County because a pa *521 ternity action in Jefferson County involving the children and their parents had been litigated to a judgment, that transfer was not accepted, and the juvenile court implicitly reassumed jurisdiction (the children having been alleged in the termination petitions to be living at the maternal grandparents’ residence located in Shelby County). The father then filed an answer and a counterclaim for pendente lite and permanent custody of the children, and the juvenile court subsequently awarded him pendente lite custody of the children.
In July 2006, after partially completing ore tenus proceedings, the juvenile court issued an order determining the children to be dependent, denying the maternal grandparents’ requests to terminate the parental rights of the mother and the father, altering visitation pendente lite, and setting the case for the receipt of further testimony. In August 2007, after further hearings, the juvenile court entered a judgment confirming its previous determinations regarding dependency and denial of the termination petitions and awarding the father custody of the children. The juvenile court extended the following visitation privileges to the maternal grandparents: a 48-hour weekend each month, weekly telephone contact between the children and the grandparents for 30 minutes, 2 lunch periods each month at the children’s school at which the grandparents would be entitled to be present, and visitation “at other times as may be agreed upon by the parties.” As to the mother, the juvenile court found that the mother had relinquished her parental rights to her parents (i.e., the maternal grandparents) and had no maternal bond with the children; however, the mother was nonetheless authorized to visit with the children “during the dates and times [the] children are visiting with the [m]aternal [grandparents.” Although the juvenile court set a September 2007 hearing on certain motions of the parties concerning visitation matters, the August 2007 judgment indicates an intent to dispose of all other pending matters, and it expressly states that any party would have the right to appeal within 14 days. After the denial, pursuant to Rule 59.1, Ala. R. Civ. P., and Rule 1, Ala. R. Juv. P., of their post-judgment motions, the mother (case No. 2061197) and the maternal grandparents (case No. 2070005) filed notices of appeal; those appeals have been consolidated for review, and the juvenile court has certified the record on appeal as adequate for review by this court.
In these two appeals, the mother suggests that the judgment is not final, asserts that the award of custody to the father is erroneous, and contends that she should have been awarded visitation rights that are not dependent upon those of the maternal grandparents. The maternal grandparents, in their appeal, likewise suggest nonfinality and assert error in the award of custody to the father; they further contend that the juvenile court should have included, in its August 2007 judgment, standard language specified in the Alabama Parent-Child Relationship Protection Act, AIa.Code 1975, § 30-3-160 et seq. (“the APCRPA”). We will address the appellants’ overlapping arguments regarding finality and error as to the custody award together, and we will then separately address those issues (i.e., the mother’s visitation argument and the maternal grandparents’ argument concerning the APCRPA) that are unique to each separate appeal.
The first issue raised by both the mother and by the maternal grandparents is whether the judgment under review is final. In its August 2007 judgment, the juvenile court determined that the children *522 remained dependent, denied the maternal grandparents’ request for termination of the parents’ parental rights, and made a disposition of the children’s custody. Under our caselaw, a formal determination by a juvenile court of a child’s dependency coupled with an award of custody incident to that determination will give rise to an appealable final judgment even if the custody award is denominated as a “temporary” award and further review of the case is envisioned. See Potter v. State Dep’t of Human Res., 511 So.2d 190, 192 (Ala.Civ.App.1986); see also C.L. v. D.H., 916 So.2d 622, 625-26 (Ala.Civ.App.2005). We thus reject the appellants’ challenges to the finality of the judgment under review.
We next address the appellants’ contention that the juvenile court erred in awarding custody of the children to the father incident to its determination that the children were dependent.[1] In Ex parte Alabama Department of Human Resources, 682 So.2d 459 (Ala.1996), the Alabama Supreme Court stated the applicable principles of appellate review in the context of a challenge to a juvenile court’s custodial disposition of a dependent child:
“Appellate review is limited in cases where the evidence is presented to the trial court ore tenus. In a child custody case, an appellate court presumes the trial court’s findings to be correct and will not reverse without proof of a clear abuse of discretion or plain error. Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991); J.S. v. D.S., 586 So.2d 944 (Ala.Civ.App.1991). This presumption is especially applicable where the evidence is conflicting. Ex Parte P.G.B., 600 So.2d 259, 261 (Ala.1992). An appellate court will not reverse the trial court’s judgment based on the trial court’s findings of fact unless the findings are so poorly supported by the evidence as to be plainly and palpably wrong. See Ex Parte Walters, 580 So.2d 1352 (Ala.1991).”
682 So.2d at 460. The pertinent question is, therefore, whether the juvenile court’s judgment awarding custody of the children to the father, rather than the maternal grandparents, is supported by the evidence when the evidence is viewed in a light most favorable to the judgment under review. See Whitt v. Whitt, 460 So.2d 1328, 1329 (Ala.Civ.App.1984); see also Russell v. Russell, 19 So.3d 879, 880 (Ala.Civ.App.2008).
The record reveals that, in March 1996, the mother, while unmarried, gave birth to the two children whose custody is at issue. At the time, both the mother and the father were still enrolled in high school. In a subsequent proceeding to determine the paternity of the children, the father was found to be the children’s biological father; was given certain visitation rights with the children; and was directed to pay $200 in monthly child support to the mother, who had continued to live with her parents (i.e., the maternal grandparents) after the birth of the children.
During the years immediately following the birth of the children, the father attended college in Tennessee and medical school in Alabama, ultimately becoming a medical doctor. Although disputed, there was testimony from the father and his parents (the paternal grandparents of the children) that the father had consistently exercised the twice-monthly weekend-visitation rights awarded him in the paternity judgment, with the exception of one weekend when the father was ill. Moreover, the father testified that, as required by the paternity judgment, he had paid child sup *523 port throughout his enrollment in college and medical school.
Although the mother was awarded custody of the children in the paternity judgment, much of the actual care for the children was provided by the maternal grandparents for the first six years of their lives, after which the mother and the children moved from the maternal grandparents’ home to a separate residence in Homewood. The mother married her current husband, D.J., in 2003, and the mother and her husband moved with the children to Lawrence County. However, during 2004, while the children were living with the mother and her husband, the husband began treating the children harshly; according to the mother, he administered immoderate corporal punishment and engaged in behavior that amounted to abuse of the children, such as shaking one of the children until he began urinating. In response to her husband’s behavior towards the children, the mother sent the children back to the maternal grandparents’ home to live and executed written documents in which she purported to grant her custodial rights to the maternal grandparents. The children subsequently lived with the maternal grandparents until August 2005, when the father was awarded pendente lite custody.
The father testified in the juvenile court that, upon the relocation of the children in 2004 to the maternal grandparents’ home, the maternal grandparents had returned to the now eight-year-old children their former security objects (i.e., a blanket and a burp rag) from which they previously had been weaned by the mother. There was also evidence adduced at trial indicating that the maternal grandparents had come to the children’s school to eat lunch with them one to three times per week after the father had been awarded penden-te lite custody and that other students at the school had teased the children because of the maternal grandparents’ physical displays of affection. The father recounted having witnessed the maternal grandparents, while the children were competing in a youth football game, holding the children’s heads back and sticking water bottles in their mouths in a manner reminiscent of feeding infants. Additionally, there was evidence indicating that the maternal grandparents had coached the children as to specific incidents they should relate to counselors and to their guardian ad litem and that the maternal grandparents had given the children books in which they had written down accounts of actions of the father and his current wife that might bear on the ongoing litigation in the juvenile court.
As to the father’s fitness, there was evidence indicating that the father was working as a physician in upper-level residency, had married (and had a daughter with) his wife, L.A.W., and had acquired a residence in northern Jefferson County. The father’s wife is a retired high-school teacher and a full-time homemaker who assists the father with the children’s care. Although the children had repeated the first grade in school while under the care of the mother, the father testified that the children (who were in fourth grade at the time of trial) had been doing well in school while in his care. A home study undertaken by a representative of the Jefferson County Department of Human Resources concluded that the father’s home was “safe and secure” for the children and that the father and his wife appeared to be “committed to ensuring that the well being of the [children] is met in the most appropriate manner.”
At trial, the children’s guardian ad litem called as a witness a special advocate that had been appointed by the court to evaluate the children’s best interests. The spe- *524 eial advocate testified concerning her observations that although the children were very pleasant, had bonded to both the father and the maternal grandparents, and had expressed no complaints as to the care of the father or the maternal grandparents, the children had tended to be slightly more “hyper” in the company of the maternal grandparents and to engage in behavior that is more characteristic of early childhood in the presence of the maternal grandparents. The special advocate intimated that the children might be susceptible to problems with acknowledging authority in their teenage years if their bond with the father was weaker than with the maternal grandparents, and she recommended that the children’s contact with the maternal grandparents be reduced to one weekend of visitation per month.
Citing S.P. v. V.T., 988 So.2d 572 (Ala.Civ.App.2008), in their appellate brief, the maternal grandparents appear to contend that precedents requiring reversal when a trial court has applied too stringent a substantive standard in determining a custody matter mandate reversal of the juvenile court’s judgment in this case. See generally Rehfeld v. Roth, 885 So.2d 791, 794-95 (Ala.Civ.App.2004) (summarizing principles governing when application of erroneous standard to custody matter is and is not reversible error). In this case, however, the juvenile court’s judgment, to the extent that it reflects the use of any particular custody standard, indicates that that court considered what custody and visitation arrangement would serve the “best interest” of the children. That standard is consonant with the role of juvenile courts in situations in which children have been found dependent, as in this case: “a juvenile court may make any disposition that advances the best interest and welfare of the child when faced with determining the proper placement of a dependent child.” B.H. v. Marion County Dep’t of Human Res., 998 So.2d 475, 481 (Ala.Civ.App.2008) (citing Ala.Code 1975, § 12-15-71(a), and J.S.M. v. P.J., 902 So.2d 89, 94-95 (Ala.Civ.App.2004)). We perceive from the record no erroneous application of a higher standard by the juvenile court than the “best interest” standard espoused by our legislature in § 12-15-71(a).
The maternal grandparents further intimate that reversal is appropriate based upon the doctrine of voluntary forfeiture, relying primarily upon the main opinion in Ex parte G.C., 924 So.2d 651 (Ala.2005), which had, in turn, relied upon our decision in K.C. v. D.C., 891 So.2d 346 (Ala.Civ.App.2004). As an initial matter, whether the father voluntarily forfeited any primary custodial rights before the maternal grandparents initiated these proceedings is immaterial. As we have noted, the juvenile court has determined the children to be dependent, and, therefore, that court was empowered to award custody in any manner “that advances the best interest and welfare of the child” (B.H., supra), including even placement with a nonparent (see J.W. v. C.H., 963 So.2d 114, 121 (Ala.Civ.App.2007)). Even were we to assume that the father’s potential forfeiture of custody is a material consideration, however, we note that in both G.C. and K.C. custodial dispositions were affirmed because the pertinent trial court had properly found from the facts that a child’s father had voluntarily forfeited custody to the child’s maternal grandparents. We have no such finding in this case, and the conduct of the father in this case does not equate with the conduct of the father in EC. (who asked the maternal grandmother to rear his child because he could not, see 891 So.2d at 347) or the father in G.C. (who was found to have a pattern of irresponsibility such that he was unfit to have custody of any child, see 924 So.2d at 656-57).
*525 Based upon our consideration of the conflicting evidence in this case under the applicable standard of review, and viewing that evidence in a light most favorable to the judgment under review, as we must, we conclude that the mother and the maternal grandparents have not demonstrated reversible error as to the juvenile court’s custody award to the father. Thus, as to that issue, the juvenile court’s judgment is due to be affirmed.
Having addressed the common issues presented by the two consolidated appeals, we next consider issues raised separately by the maternal grandparents and the mother. The mother contends on appeal that the juvenile court’s judgment erroneously fails to afford her “unencumbered” visitation periods with the children. As the mother correctly notes, our cases have consistently held that a parent who retains residual parental rights (see § 12-15-1(24), Ala.Code 1975) as to his or her child is generally entitled to definite periods of visitation with that child; as the main opinion in D.B. v. Madison County Department of Human Resources, 937 So.2d 535, 541 (Ala.Civ.App.2006), states, “it is reversible error for a trial court to leave a noncustodial parent’s visitation rights with his or her child to the discretion of the custodial parent or other legal custodian of the child.” Thus, in L.L.M. v. S.F., 919 So.2d 307 (Ala.Civ.App.2005), we reversed a juvenile-court judgment allowing a mother to visit with her dependent child only ‘“when the father or the child [was] in the locality in which the mother reside[d],’ ” concluding that the judgment had “place[d] the father in control of the mother’s visitation” and that “a specific visitation schedule” should have been set forth. 919 So.2d at 314-15.
In this case, although the juvenile court determined that “the children have a right to contact and visit with their mother” notwithstanding evidence tending to show the mother’s relinquishment of her custodial rights to the maternal grandparents, that court specified that the mother’s visitation with the children was to occur on “the dates and times said children are visiting with the [m]aternal [grandparents.” Like the judgments condemned in D.B. and L.L.M., the condition placed upon the mother’s visitation rights is within the control of other parties — if the maternal grandparents do not actually exercise their visitation rights, there will be no regular period during which the children “are visiting with” the maternal grandparents, and the mother and children will have no independent right of contact with each other.
The father, in defense of the juvenile court’s judgment concerning visitation, points to testimony of the mother and the mother’s sister to the effect that any visitation between the mother and the children should occur out of the presence of the mother’s husband and at the home of the maternal grandparents. Although such testimony does appear in the record, we cannot infer from that testimony any intent on the mother’s part to waive a separate right of visitation. As the judgment currently reads, the mother would not be authorized to visit with the children at any time in the absence of the maternal grandparents, even during periods when the mother might be able to care for the children at the home of the maternal grandparents while the maternal grandparents are away. We conclude, therefore, that the mother has demonstrated reversible error as to the juvenile court’s visitation award.
 However, we reject the maternal grandparents’ argument that the judgment of the juvenile court is due to be reversed based upon its failure to include provisions regarding parental relocation as mandated by the APCRPA. Although the APCRPA *526 does indeed require that a court rendering a custody judgment include language that informs the parties of their rights and obligations in the event of a proposed relocation of the primary custodial parent of a child, see generally Ala.Code 1975, § 30-3-166, the maternal grandparents did not assert in the juvenile court that the failure to include the required language was erroneous. Thus, they have waived that ground as a basis for reversal. See Sankey v. Sankey, 961 So.2d 896, 898 (Ala.Civ.App.2007) (failure to present argument that APCRPA was unconstitutional to trial court barred appellate consideration of that argument). That said, should the maternal grandparents wish to insist upon inclusion of the mandated language in the judgment, the APCRPA provides that they may petition to modify that judgment accordingly. See Ala.Code 1975, § 30-3-162(a) (“Any person entitled to the legal or physical custody of or visitation with a child may commence an action for modification to incorporate the provisions of [the APCRPA] into an existing order determining the custody of or visitation with a child.”). Indeed, because the cases under review are being remanded because the provisions of the judgment pertaining to the mother’s visitation must be reexamined by the juvenile court, it would seem reasonable to conclude that the maternal grandparents may properly seek such relief in the juvenile court upon remand from this court.
Because the juvenile court improperly conditioned the mother’s visitation with the children upon the maternal grandparents’ exercise of their own visitation rights, we reverse the juvenile court’s judgment insofar as it addresses the issue of the mother’s visitation. In all other respects, we affirm the juvenile court’s judgment. The cases are remanded to the juvenile court for further proceedings in conformity with this opinion. The father’s requests for an award of attorney fees in these appeals are denied.
2061197 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
2070005 — AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. No party has contended that the juvenile court erred in determining that the children were dependent; thus, that issue is not presented for this court's review.