THOMPSON, Presiding Judge.
On September 28, 2009, the Shelby County Department of Human Resources (“DHR”) filed a complaint seeking to have A.K. (“the child”) declared dependent. In its complaint, DHR alleged that P.K. (“the father”) and J.K. (“the mother”) had endangered the child by exposing her to the domestic violence between them. Pursuant to a safety plan entered into by the parents and DHR, the child was placed in the home of D.H. (“the paternal grandmother”). An October 27, 2009, pendente lite order continued the child’s placement with the paternal grandmother and awarded the parents supervised visitation with the child.
*809 On December 15, 2009, the juvenile court entered an order in which it, among other things, determined that the mother and the father had each stipulated to the child’s dependency and found the child dependent. As part of that December 15, 2009, order, the parents were ordered to cooperate with the services offered by DHR and set forth in an Individualized Service Plan (“ISP”). The child was placed, pending further court order, in the custody of the parents, with primary physical custody awarded to the mother. DHR was ordered to continue to supervise and provide services for the family.
On March 26, 2010, DHR filed in the juvenile court a motion for an immediate shelter-care hearing. In that motion, DHR alleged that the child had been taken into protective custody based on reports of “unstable and/or irrational activities” by the mother.
Also on March 26, 2010, the juvenile court entered an order finding that “the child has no parent, guardian, custodian or other suitable person able to provide for the child’s supervision and welfare” and awarding pendente lite custody of the child to the paternal grandmother. The juvenile court awarded the mother and the father supervised visitation with the child, and it specified that the mother’s visitation was to be supervised by J.H., the maternal grandmother. The signatures of the mother and the father appear on the March 26, 2010, order.
On April 15, 2010, the mother, then represented by new counsel, filed a “motion to set aside” the March 26, 2010, order. We note that, because it was filed more than 14 days after the entry of the March 26, 2010, order, it was not a valid post-judgment motion. See Rule 1(B), Ala. R. Juv. P. (providing that a postjudgment motion in a juvenile action must be filed within 14 days after the entry of an order or judgment). In her April 15, 2010, motion, the mother alleged that, in stipulating to the terms of the March 26, 2010, order, she had not understood that she was stipulating to the dependency of the child.
On July 9, 2010, DHR filed a motion alleging that the mother and the father had been exercising unsupervised visitation with the child in violation of earlier court orders. As a result, DHR sought to have the mother, the father, and the maternal grandmother held in contempt.
The juvenile court entered an order on July 9, 2010, finding the child dependent based on the parties’ “admissions and from the clear and convincing evidence presented for the purposes of adjudication.”[1] The juvenile court continued the award of custody of the child to the paternal grandmother, and it ordered that the parents’ visitation be supervised by DHR or its designee. That order, like the earlier orders, also set forth in detail the various services DHR was providing the parents and ordered the parents to cooperate or comply with those services. In addition, in the July 9, 2010, dependency order, the juvenile court scheduled a dispositional hearing for September 2010. The parents’ signatures appear on the July 9, 2010, order.
The dispositional hearing was rescheduled at least one time, and it ultimately was conducted on January 13, 2011.
On November 3, 2011, the juvenile court signed an order in which it found that the child remained dependent and awarded custody of the child to the paternal grandmother. In that order, the juvenile court specified, among other things, that the *810 mother and the father were awarded supervised visitation “as agreed to and arranged by the parties.” The juvenile court also scheduled a review hearing for December 20, 2011.
Although the November 3, 2011, order contains the juvenile court clerk’s date stamp, that order was not entered in the State Judicial Information System (“SJIS”). Accordingly, that order was not “entered” by the juvenile court as required by Rule 58(c), Ala. R. Civ. P., which specifies that “[a]n order or a judgment shall be deemed ‘entered’ within the meaning of these Rules and the Rules of Appellate Procedure as of the actual date of the input of the order or judgment into the State Judicial Information System.” Thus, because it was not entered in the SJIS, the November 3, 2011, order did not constitute a valid order or judgment of the juvenile court. See Graves v. Golthy, 21 So.3d 720, 721 (Ala.2009) (The judgment “constituted a final, appealable judgment” on the date it was entered in the SJIS rather than on the date it was stamped “filed” by the court clerk.).
The mother filed a motion titled “motion to reconsider” the November 3, 2011, order.[2] In that motion, the mother argued, among other things, that the November 3, 2011, order had not been “entered” in the SJIS and that she had not received notice of it.
On December 20, 2011, the juvenile court conducted the scheduled review hearing, and, during that hearing, it considered the pending motions to “reconsider.” [3] On that same date, the juvenile court entered an order in which it, among other things, specified that the November 3, 2011, order “remains” the court’s order and reiterated the provisions of that order. Accordingly, we conclude that the December 20, 2011, order incorporated the terms of the November 3, 2011, order. In addition, in its December 20, 2011, order, the juvenile court relieved DHR from any further involvement in the action, ordered the case “closed,” and assessed costs. The SJIS contains references to the December 20, 2011, order such that this court concludes that that order was entered in the SJIS pursuant to Rule 58(e). Therefore, the December 20, 2011, order is the final judgment in this matter. Graves v. Golthy, supra. The mother filed a timely notice of appeal from the December 20, 2011, order.
As an initial matter, we note that the mother, without citing any supporting authority, argues that the delay between the ore tenus hearing and the entry of the juvenile court’s judgment was unreasonable. The mother’s attorney represents in the mother’s brief to this court that on several occasions he had orally requested a ruling from the juvenile court. However, *811 the mother did not file any motion to that effect in the juvenile court, nor did she seek relief from this court for the extensive delay in this juvenile action between the date of the hearing and the ruling.
Regardless, we encourage the juvenile court to strive to resolve these matters in a more expeditious manner. “It is clear from the former [Alabama Juvenile Justice Act], the 2008 [Alabama Juvenile Justice Act], and the Alabama Rules of Juvenile Procedure that, in resolving issues involving juveniles, time is of the essence.” Ex parte T.C., 96 So.3d 123, 129 (Ala.2012).
The mother argues in her brief to this court that the juvenile court violated her due-process rights by awarding custody of the child to the paternal grandmother when the paternal grandmother did not assert a claim for custody in the juvenile court. Although the paternal grandmother did not prosecute a claim seeking custody of the child, she indicated to the juvenile court that she would be willing to accept custody of the child in order to meet the child’s needs. Thus, the juvenile court was free to award custody of the child to her. See § 12 — 15—314(a)(3)c. and (4), Ala.Code 1975 (a juvenile court may award custody of a dependent child to a relative or “[m]ake any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child”).[4] Further, the mother fails to cite to any authority in support of her due-process argument. It is not the function of this court to perform an appellant’s legal research. See Sea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) (“Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court’s duty nor its function to perform all the legal research for an appellant.”).
The mother also argues in her brief submitted to this court that she “inadvertently” stipulated to the dependency of the child in the December 15, 2009, order. The mother argues that she believed that she was merely acknowledging the dependency allegation and that she did not intend to agree that the child was dependent. Although the mother argues in her brief on appeal that she filed a motion in which she “disavowed” her stipulation to the dependency of the child, the purported disavowal was made in the mother’s April 15, 2010, motion filed in reference to the March 26, 2010, order.[5] Regardless, the mother does not argue, as part of this appeal, that the juvenile court erred in finding the child dependent in its December 15, 2009, order, and, had she done so, this court would be unable to review that order because the mother did not timely appeal it. E.D. v. Madison Cnty. Dep’t of Human Res., 68 So.3d 163, 167 (Ala.Civ.App.2010). Moreover, the mother again stipulated to the issue of dependency as part of the July 9, 2010, order; that stipu *812 lation supplanted the earlier, stipulations. The record contains, no indication that the mother ever argued to the juvenile court, nor does she argue to this, court, that she did not willingly and knowingly stipulate to that portion of the July ■ 9, 2010, order finding the child dependent.
The mother does not address in her brief on appeal her stipulation to that portion of the July 9, 2010, order finding the child to be dependent. As already indicated, the July 9, 2010, order, among other things, scheduled the matter for a disposi-tional hearing. See § 12-15-311(a), Ala. Code 1975 (“If the juvenile court finds from clear and convincing evidence ... that a child is dependent, the juvenile court may proceed immediately, in the absence of objection showing good cause or at a postponed hearing, to make proper disposition of the case.” (emphasis added)). At the beginning of the January 13, 2011, hearing, the juvenile court expressly noted that the child was dependent and that the parties were before the court solely on the issue of the disposition, or placement, of the child. Specifically, the juvenile court stated:
“THE COURT: All right. In this case the court — a petition was filed alleging the child to be dependent. On December 15th, 2009, the court entered an order adjudicating the child to be dependent, placing custody with — or leaving custody with both parents, placement with the mother, pending an order from a court of competent jurisdiction.
“Subsequent to that, the Department of Human Resources filed a motion for a shelter care hearing. That shelter care hearing was held on March 26th, 2010. And pursuant to a shelter care order, the court left custody with both parents, placement with [the paternal grandmother] for shelter-care purposes.
“We came back on July 9th, 2010, for a subsequent adjudication. At that time an order was entered adjudicating the child to be dependent, placing custody with [the paternal grandmother], pending a further or pending a disposition trial that was originally set on September 16th. It was not heard that day, has been continued a couple of times, and that is what we are here today about is the disposition that attaches to the adjudication order of July 9th, 2010.
“With that, this hearing will be in the nature of a dispositional hearing. Therefore, all evidence that is relevant and material is admissible. The law specifically excludes [sic] the competent, relevant, material, which allows the court to hear hearsay testimony, and documentary evidence can come in in certain manners, just basically relaxing the rules of evidence for the court to get information necessary to make a determination as to what the appropriate placement for this dependent child is.”
(Emphasis added.)
After that statement, the juvenile court asked the parties whether they were ready to proceed, and each answered in the affirmative. None of the parties disputed that the child was dependent or that the purpose of the January 13, 2011, hearing was for the determination of the disposition of a dependent child. In fact, the parties, including the mother, mentioned that the January 13, 2011, hearing was a disposi-tional hearing on several occasions, including in their discussions of the relaxed evi-dentiary rules applicable to a dispositional, as opposed to an adjudicatory, hearing. See § 12-15-311(b), Ala.Code 1975 (in a dispositional hearing, “all relevant and material evidence helpful in determining the best interests of the child ... may be received by the juvenile court even though not admissible in the adjudicatory hear *813 ing”); see also R.G. v. Calhoun Cnty. Dep’t of Human Res., 716 So.2d 219, 220 (Ala.Civ.App.1998) (holding that, under the predecessor to § 12-15-311(b), Ala.Code 1975, “[i]n a dispositional hearing, all material and relevant evidence may be considered by the trial court”); and Heup v. State Dep’t of Human Res., 522 So.2d 295, 298 (Ala.Civ.App.1988) (same).
The mother argues before this court that the evidence at the January 13, 2011, hearing did not support a determination that the child was dependent. However, “because the mother had already stipulated to the dependency of the child, DHR did not have the burden of proving the dependency of the child in the disposi-tional hearing.” K.D. v. Jefferson Cnty. Dep’t of Human Res., 88 So.3d 893, 896-97 (Ala.Civ.App.2012). Thus, because the record on appeal demonstrates that the mother had stipulated to the issue of the child’s dependency, we cannot say that there is merit to her argument that the evidence did not support a finding of dependency. Id. at 896 (“[W]hen parties stipulate to the dependency of a child, a juvenile court may find a child dependent without clear and convincing evidence establishing the child’s dependency.”).
In her briefs submitted to this court, the mother does not explicitly argue that the juvenile court erred in awarding custody of the child to the paternal grandmother pursuant to the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975.[6] See § 12-15-314(a)(3)c., Ala.Code 1975 (providing that a juvenile court may award custody of a dependent child to a relative the juvenile court concludes is “qualified to receive and care for the child”). However, language in her brief could possibly be construed as raising such an argument.
Therefore, out of an abundance of caution, we briefly address that issue.
We first note that after a child has been adjudicated to be dependent, a juvenile court may make any custodial disposition that is in the child’s best interests. § 12-15-314(a), Ala.Code 1975; K.F. v. Cleburne Cnty. Dep’t of Human Res., 78 So.3d 983, 988-89 (Ala.Civ.App.2011).
“ ‘In Ex parte Alabama Department of Human Resources, 682 So.2d 459[, 460] (Ala.1996), the Alabama Supreme Court stated the applicable principles of appellate review in the context of a challenge to a juvenile court’s custodial disposition of a dependent child:
“ ‘ “Appellate review is limited in cases where the evidence is presented to the trial court ore tenus. In a child custody case, an appellate court presumes the trial court’s findings to be correct and will not reverse without proof of a clear abuse of discretion or plain error. Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991); J.S. v. D.S., 586 So.2d 944 (Ala.Civ.App.1991). This presumption is especially applicable where the evidence is conflicting. Ex Parte P.G.B., 600 So.2d 259, 261 (Ala.1992). An appellate court will not reverse the trial court’s judgment based on the trial court’s findings of fact unless the findings are so poorly supported by the evidence as to be plainly and palpably wrong. See Ex parte Walters, 580 So.2d 1352 (Ala.1991).” ’ ”
K.F. v. Cleburne Cnty. Dep’t of Human Res., 78 So.3d at 989 (quoting J.J. v. J.H.W., 27 So.3d 519, 522 (Ala.Civ.App.2008)).
*814 The mother testified that in September 2010 she separated from the father and filed a complaint for a divorce from the father. The mother and the father had twice before sought to divorce in 2010, but they had reconciled each time. The mother testified that the marriage was over, but she admitted having “gone out a couple of times” with the father since their latest separation.
In her testimony, the mother minimized the extent of the confrontations between herself and the father, she denied any domestic violence between the two, and she stated that the marriage was over. It is undisputed that, after her September 2010 separation from the father, the mother moved into her mother’s home but that the mother had moved out of her mother’s home to live in a hotel in December 2010. At the time of the January 13, 2011, hearing, the mother testified, she was living in a hotel and planned to move to a townhouse on February 1, 2011; the mother stated that she had signed a lease for that townhouse.
The record indicates that the mother and the father agreed that the paternal grandmother had done a good job in caring for the child while the child had been in her custody and that the paternal grandmother would continue to do so. The paternal grandmother indicated, in a filing in the juvenile court, her willingness to continue to serve as a placement or custodian for the child.
We note that much of the mother’s testimony about events that had occurred during the pendency of this matter, or regarding her knowledge of and cooperation with reunification goals, was contradicted by the evidence presented by DHR. No useful purpose would be served by setting forth a discussion of that evidence. Rather, we note that it is the responsibility of the juvenile court, as the trier of fact, to resolve conflicts in the evidence. J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1196 (Ala.Civ.App.2007). The juvenile court is in the best position to do so, because it has the advantage of observing the parties and witnesses as they testify and, thereby, assess their demeanor and credibility. Id. Thus, assuming that it resolved some or all of those factual disputes against the mother, the juvenile court was free to reject some or all of the remainder of the mother’s testimony as lacking in credibility. Ex parte A.M.B., 4 So.3d 472, 474 n. 3 (Ala.2008); Agee v. State ex rel. Galanos, 627 So.2d 960, 963 (Ala.Civ.App.1993).
Our review of the evidence in the record on appeal supports a conclusion that the juvenile court received evidence that could cause it to question the mother’s credibility, including her statements that she could adequately care for and protect the child. In contrast, the evidence indicated that the paternal grandmother had provided a good home for the child, that she had protected the child during the pendency of this matter, and that she was willing to continue to do so. Given the evidence presented to it, we cannot say that the juvenile court erred in determining that an award of custody of the child to the paternal grandmother was in the child’s best interests.
The mother last argues that the juvenile court erred in awarding her visitation at the discretion of the paternal grandmother rather than awarding her a specific schedule of visitation with the child. This court has stated:
“[T]he determination of proper visitation “ ‘ “is within the sound discretion of the trial court, and that court’s determination should not be reversed by an appellate court absent a showing of an abuse of discretion.” Ex parte Bland, *815 796 So.2d [340] at 343 [ (Ala.2000) ]. “The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.” DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (citation omitted).’
“Williams v. Williams, 905 So.2d 820, 830 (Ala.Civ.App.2004).
“Although this court recognizes that visitation is a matter left to the sound discretion of the trial court, such discretion is not unbounded. This court has previously held that it is reversible error for a juvenile court to leave the matter of a noncustodial parent’s visitation rights to the sole discretion of a custodial parent or other legal custodian of the child. See, e.g., L.L.M. v. S.F., 919 So.2d 307 (Ala.Civ.App.2005) (reversing a juvenile court’s visitation award that placed the father in control of the mother’s visitation with the child), and K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379 (Ala.Civ.App.2004) (reversing a juvenile court’s visitation award that essentially conditioned the mother’s right to visitation with her child upon the consent of the child’s aunt and uncle); see also D.B. v. Madison County Dep’t of Human Res., 937 So.2d 535, 541 (Ala.Civ.App.2006) (plurality opinion reversing a juvenile court’s judgment that made the mother’s visitation ‘ “subject to any conditions and limitations deemed to be necessary and appropriate’” by the child’s great aunt, who was awarded custody of the child).”
A.M.B. v. R.B.B., 4 So.3d 468, 471-72 (Ala.Civ.App.2007) (concluding that “the juvenile court in this case erred in failing to set forth a specific minimum visitation schedule,” id. at 472).
Accordingly, we agree with the mother that the juvenile court erred in awarding her visitation at the discretion of the paternal grandmother. We reverse the visitation provision of the juvenile court’s judgment, and we remand the cause for the entry of a judgment setting forth a specific visitation schedule. A.M.B. v. R.B.B., supra.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The record does not contain a transcript of the July 9, 2010, hearing, so this court is unable to determine to what evidence the juvenile court refers.

. That motion was not entered in the SJIS; it contains a December 5, 2011, date stamp.

. In addition to the mother’s December 5, 2011, "motion to reconsider,” see supra note 2, the juvenile court indicated that it had considered a purported postjudgment motion filed by the paternal grandmother on October 14, 2011, with regard to the July 9, 2010, dependency order. In that motion, the paternal grandmother challenged the visitation provision of the July 9, 2010, dependency order. However, that purported post-judgment motion was not timely filed. See Rule 1(B), Ala. R. Juv. P. (a postjudgment motion in a juvenile action must be filed within 14 days). In the October 14, 2011, motion, the paternal grandmother requested that the juvenile court enter an order allowing the maternal grandmother and J.K. and K.K., the paternal grandfather and the paternal stepgrandmother, to have unsupervised visitation with the child. In resolving this appeal, we do not determine, even assuming that the motion had been timely filed, whether the paternal grandmother had standing to seek that relief.

. As is discussed later in this opinion, we conclude that the January 13, 2011, hearing was a dispositional, rather than an adjudicatory, hearing.

. In resolving this appeal, this court need not and does not decide whether the mother's stipulation to the March 26, 2010, order in which the juvenile court found the child “was without a parent ... able to provide for the child’s supervision and welfare” constituted a dependency determination. Compare § 12-15-102(8), Ala.Code 1975 (using similar language to define the term "dependent child”); see also Ex parte L.E.O., 61 So.3d 1042, 1047 (Ala.2010) ("It is a reasonable interpretation of [§ 12-15-102, defining a ‘dependent child,’] to require that, in determining whether a child is ‘in need of care or supervision,’ the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child.”).

. In her reply brief, the mother again reiterates her argument that the child was not dependent.