MURDOCK, Justice
(concurring specially).
I concur in the main opinion and write separately to further explain my reasons for doing so.
I begin by noting the unique language of § 12-15-601, Ala.Code 1975:
“A party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court proceeding pursuant to this chapter. The procedure for appealing these cases shall be pursuant to rules of procedure adopted by the Supreme Court of Alabama. All appeals from juvenile court proceedings pursuant to this chapter shall take precedence over all other business of the court to which the appeal is taken.”
(Emphasis added.) Obviously, the emphasized language was not intended by the legislature to give a right of appeal from any order by a juvenile court in a juvenile proceeding because, among other things, such orders would include nonsubstantive administrative orders regarding scheduling and other matters. It is, however, an effort by the legislature to recognize that juvenile proceedings are different and that, unlike conventional civil cases, typically do involve a number of intermediate “juvenile court proceedings” that result in judgments from which a party should be able to appeal because those judgments decide the rights of the parties to custody, visitation, and other significant matters that the parent and the child — and the State — must live by until the next hearing.
Accordingly, against the backdrop of the emphasized language, this Court and the Court of Civil Appeals have recognized the unique nature of juvenile proceedings that make an appeal appropriate from any one of multiple judgments that may be entered during the life of a juvenile case. Citing the Court of Civil Appeals’ opinion in C.L. v. D.H., 916 So.2d 622 (Ala.Civ.App.2005), we stated in Ex parte T.C., 96 So.3d 123, 130.(Ala.2012), that,
“unlike other civil cases, dependency and termination-of-parental-rights proceedings may involve multiple ‘final’ ap-pealable orders before the juvenile case is closed. For example, temporary custody orders are treated as final, appeal-able orders. See, e.g., C.L. v. D.H., 916 So.2d 622 (Ala.Civ.App.2005) (holding that order awarding maternal grandmother primary physical custody of a child in a dependency case was a final appealable order as opposed to a pen-dente lite order).”[2]
*32 Unlike normal civil cases in which a fixed set of facts is at issue, the facts of juvenile cases are dynamic: children grow from month to month, and the facts regarding the parents’ rehabilitation and suitability are subject to change. In effect, each review of the dependency and custody of the child represents a new “case.” Each resulting judgment adjudicates the issue of dependency and custody in relation to the extant facts and establishes the rights — or lack thereof — of a parent to his or her child for a period following that particular judgment.
In contrast to the judgment at issue in Ex parte T.C., the judgment of the trial court at issue in C.L. was one that was intended to fully adjudicate the dependency vel non of the child based on the state of the facts as they existed at the time of the hearing, not to put things “on hold” with a pendente lite custody order pending the completion of hearing to allow grandparents time to present some additional evidence regarding the state of those facts. The Court of Civil Appeals explained in C.L. that juvenile cases are unique for the reasons stated above:
“The setting of the case for a ‘review’ approximately four months later does not make the juvenile court’s May 28 judgment a pendente lite order. The juvenile court’s judgment does not indicate that the purpose of the September 2004 ‘review’ hearing would be to finish receiving evidence as to the extant facts as of May 2004. To the contrary, the record and the juvenile court’s May 28 judgment fully indicate that it had already heard that evidence and was entering a judgment based thereon. Instead, the judgment indicates that the juvenile court would at its ‘review’ consider a modification of the custody of the child based on whatever new facts might come into existence between the time the juvenile court entered its judgment on May 28, 2004, and the scheduled ‘review’ on September 15, 2004. Cf. Hodge v. Steinwinder, 919 So.2d 1179 [ (Ala.Civ.App.2005) ] (holding that the issue of the finality of an order in a child-custody case was controlled by the fact that the trial court’s judgment was final as to the facts presented at trial and would only be modified in the event that new facts subsequently developed justifying a modification of that judgment).
“In other words, the setting of the September ‘review’ hearing was not a function of a need for the parties to complete the gathering and presentation to the court of the evidence of the facts already in existence [as we subsequently held to be the case in Ex parte T.C.]. The court’s expressed willingness to consider a change in the custodial placement of the child was made in contemplation of new facts — i.e., developments in the lives of the mother and the child and their relationship that might occur after the court entered its order.
“Consistent with the general principles discussed above, orders such as the one at issue here have been held in dependency cases to be appealable. In Morgan v. Lauderdale County Department of Pensions & Security, 494 So.2d 649 (Ala.Civ.App.1986), the trial court entered an order dated February 17, 1984, adjudicating children to be dependent and awarding their temporary custody to the Department of Pensions and Security (‘DPS’). Like the review contemplated by the juvenile court in this case (indeed, in most dependency cases), the case was periodically ‘reviewed’ by the trial court (once on May 10, 1984 *33 (approximately two months after the trial court’s initial dependency adjudication), and again on November 21, 1984 (approximately six months later)). After each of those subsequent ‘reviews,’ the trial court entered an order finding that the child remained dependent and making a custodial disposition of that child until the next review hearing. As in the present case, the setting of those subsequent review hearings gave the mother an opportunity to improve herself or her condition and to regain custody of the children — ie., to change the facts’ and present a ‘new case’ to the court, not to present new evidence of already existing facts. As this court explained, each of ‘[t]he three 198⅛ judgments of the juvenile court which removed and maintained temporary custody of the children away from the mother [were] treated as appealable orders.’ Morgan, 494 So.2d at 651. See State Dep’t of Human Res. v. R.E.C., 899 So.2d 251, 265 n. 16 (Ala.Civ.App.2003) (‘the fact that the order was therefore “temporary” or “interlocutory” in the sense that it did not bring closure to the dependency proceeding does not prevent the order from, being appealable’), rev’d on other grounds, Ex parte R.E.C., 899 So.2d 272 (Ala.2004); and Ex parte D.B.R., 757 So.2d 1193, 1195 (Ala.1998) (approving of this court’s holding in Potter v. State Department of Human Resources, 511 So.2d 190,192 (Ala.Civ.App. 1986), ‘that a decision of a juvenile court finding that children were dependent and awarding temporary custody to the children’s maternal grandparents and the state, constituted a “final judgment, order, or decree” for the purposes of the rule giving parents 14 days from the entry of a “final judgment, order, or decree” in which to file a notice of appeal’). And well they should have been, for each of those orders constituted an adjudication of the mother’s rights pending not the preparation of the case and the scheduling of the case for trial, and the unavoidable delay attendant to that process, but pending the passage of a fixed period, of time set aside by the trial court specifically for the purpose of allowing different facts, to have an opportunity to develop. Cf. Hodge v. Ste-inwinder. Each of those orders was final as to that period of time and therefore was appropriately appealable.
“Consistent with the well-established principle that an adjudication of dependency and an accompanying custodial placement of a child in a dependency proceeding is an appealable order, the juvenile court in the present case stated in its May 28, 2004, judgment that ‘any party may appeal this decision within 14 days.’ The juvenile court was right. We therefore proceed to consider this appeal on its merits.”
C.L. v. D.H., 916 So.2d at 624-26 (emphasis added).
The Court of Civil Appeals’ explanation of the issue in T.C. v. Mac.M., 96 So.3d 115, 117 (Ala.Civ.App.2011), also is helpful:
“This court has explained the circumstances under which a juvenile court’s order or judgment is sufficiently final to support an appeal:
“ ‘Although a juvenile court’s orders in a dependency case are, in one sense, never “final” because the court retains jurisdiction to modify its orders upon a showing of changed circumstances, see C.L. v. D.H., 916 So.2d 622 (Ala.Civ.App.2005); Committee Comments, Rule 4, Ala. R.App. P., this court has always treated formal dependency adjudications as final and appealable judgments despite *34 the fact that they are scheduled for further review by the juvenile court.’ “D.P. v. Limestone Cnty. Dep’t of Human Res., 28 So.3d 759, 762 (Ala.Civ.App.2009) (holding that an order finding, with regard to the father, that reasonable efforts at reunification were no longer required of the Department of Human Resources was a permanency order that was sufficiently final to support an appeal; that order also expressly left in place previous awards of legal custody incident to dependency findings ).”
Fully in keeping with the “well established” principles upon which C.L. was decided, the Court of Civil Appeals also explained as follows in J.J. v. J.H.W., 27 So.3d 519, 521-22 (Ala.Civ.App.2008):
“The first issue raised by both the mother and by the maternal grandparents is whether the judgment under review is final. In its August 2007 judgment, the juvenile court determined that the children remained dependent, denied the maternal grandparents’ request for termination of the parents’ parental rights, and made a disposition of the children’s custody. Under our caselaw, a formal determination by a juvenile court of a child’s dependency coupled with an award of custody incident to that determination will give rise to an appealable final judgment even if the custody award is denominated as a ‘temporary’ award and further review of the case is envisioned. See Potter v. State Dep’t of Human Res., 511 So.2d 190, 192 (Ala.Civ.App.1986); see also C.L. v. D.H., 916 So.2d 622, 625-26 (Ala.Civ.App.2005). We thus reject the appellants’ challenges to the finality of the judgment under review.”
27 So.3d at 521-22 (emphasis added).[3]
In the present case, the judgments at issue did make appealable adjudications as to two matters: (1) that the children continued to be “dependent” at the time of the judgment, i.e., based on the facts existing at that time, and would continue to be treated that way until the next hearing, and (2) that, at least until the next hearing, the mother would have no right to custody of the children and that the Coffee County Department of Human Resources (“DHR”) would have that right. Clearly, the aspects of the judgments finding that the children were dependent as of the date of the January 3, 2012, judgments and that custody would continue in the State after that date constituted a final adjudication of those matters for the period following the judgments, just as similar adjudications in the cases discussed above were deemed final and appealable. In other words, orders adjudicating such matters are within the uniquely worded ambit of § 12-15-601.[4]
Notwithstanding the foregoing, Presiding Judge Thompson argued in the Court of Civil Appeals for the correct result in *35 this particular ease because the mother was not, in fact, appealing from either of the aforementioned dependency and custody adjudications. Neither does she appeal from a decision by the trial court that the State need no longer provide services to her or engage in reasonable efforts to reunite her with the child or locate alternative placement resources, although the main opinion in the Court of Civil Appeals infers otherwise.[5]
Instead, as the main opinion here notes, the pertinent language of the January 3, 2012, orders of the trial court from which the mother appeals merely states as follows:
“2) Reasonable efforts have been made to reunite the mother and child and said efforts have failed.
[[Image here]]
“4) The most appropriate permanency plan is adoption.”
(Emphasis added.) Further, according to the main opinion in the Court of Civil Appeals, the mother’s arguments on appeal were limited to arguments (a) that “the juvenile court erred in finding that adoption is the most appropriate permanency plan” because this finding was not supported by the evidence, and (b) that “the juvenile court erred in finding that DHR had made reasonable efforts to reunite the mother with the children.” 145 So.3d at 15.
To the extent the mother challenges the trial court’s announcement of a new permanency plan (i.e., adoption), the particu *36 lar announcement found in the orders of the trial court in this case is not appeal-able. As worded, it does not adjudicate any rights of the mother, and, specifically, it does not relieve the State from the burden of proving at the time of a subsequent termination hearing that all the elements necessary under our statutes for such a termination are in place at that time.[6] As a corollary, neither does this announcement of a new “direction” relieve the State of any continuing obligations it might have to the mother leading up to any such termination hearing, including, for example, the investigation of alternative placements or other viable alternatives to the termination of her parental rights that might be presented. I agree with Presiding Judge Thompson, at least in regard to the facts of this case, that the announcement of adoption as the permanency plan as presented in the trial court’s orders was in the nature of an administrative matter and did not of itself actually constitute an adjudication of any rights of the mother from which an appeal would lie. F.V.O., 145 So.3d at 24 (Thompson, P.J., dissenting).
Similarly, the above-quoted finding by the trial court regarding the efforts made to date by DHR to reunite the mother and the children was not an adjudication of substantive rights of the mother from which an appeal would lie. I agree with the main opinion that, as presented by the trial court in this case, this was only a finding as to historical fact; that DHR had made such efforts up to that point; and that the efforts it had made thus far had in fact failed. As to the mother, the January 3, 2012, judgments contain no language expressly relieving DHR of its legal obligation to make reasonable efforts toward her rehabilitation and reunification with the children going forward.[7] Any doubt as to the import of the trial court’s judgments in this regard is largely alleviated in this case by the mother’s position in her brief to this Court that we should consider only what is set out in the trial court’s written orders and that those orders “did not make any finding that would cause DHR to be statutorily relieved of its obligation to make reasonable efforts to reunite the mother with her children.” Mother’s brief, at 16. Although the Court of Civil Appeals’ opinion concludes that such findings are implicit in the judgments, Presiding Judge Thompson makes a reasonable argument that they are not. F.V.O., 145 So.3d at 16-17 n. 5. In light of the mother’s position on this issue in this Court, we are not at liberty to conclude other than does Judge Thompson for purposes of the present review.
Because in this particular case the mother did not challenge on appeal any appeal-able adjudication by the trial court, I agree that the mother’s appeal should have been dismissed. I therefore concur in the main opinion.[8]

. Unlike in C.L., the juvenile judge in Ex parte T.C. made it clear that she was interrupting the hearing simply to allow the maternal grandparents to receive notice of and to participate in the hearing. She scheduled the resumption of the hearing for a date three weeks later and announced that she would finish receiving the evidence at that time. She made it clear that, in the meantime, she was not making a custody award based on the evidence heard up to that point but was merely maintaining in place the pendente lite cus *32 tody arrangement ordered at an earlier date in that juvenile proceeding.

. I note the absence in J.J. of any requirement that the award of custody to the State going forward has to involve a custody award that differs from an award included in some prior judgment. As noted above, the trial court’s order held to be appealable in D.P. v. Limestone County Department of Human Resources, 28 So.3d 759 (Ala.Civ.App.2009), expressly left in place previous awards of legal custody incident to dependency findings.

. I therefore disagree with Presiding Judge Thompson’s view that the January 3, 3012, orders were not appealable because "the custodial arrangement for the children has not changed." F.V.O. v. Coffee Cnty. Dep’t of Human Res., 145 So.3d 11, 22 (Ala.Civ.App. 2012) (Thompson, P.J., dissenting). Indeed, adopting Judge Thompson's position would require this Court to overrule substantial well established and sound precedent, some of which is discussed above.

. If the Court of Civil Appeals was correct and such adjudications had in fact been made in this case, they could have a real physical impact on the mother and/or create a real-life trajectory that would make it more difficult for her to improve her circumstances or otherwise to prevail in an eventual termination-of-parental-rights case. For that reason, if no other, such adjudications (assuming also the mother had actually argued them in her appeal), would have fallen within the well established view of precedent as to the uniquely worded provision in § 12-15-601 for appeal from a "judgment or order from any juvenile proceeding.” As the Court of Civil Appeals aptly explained in L.M. v. Jefferson County Department of Human Resources, 68 So.3d 859, 860 (Ala.Civ.App.2011):
"Initially, we note that the juvenile court’s July 15, 2010, judgment finding that the mother had abandoned the children and relieving DHR from making further reasonable efforts at reunification is a final judgment that will support an appeal. See M.H. v. Jefferson County Dep't of Human Res., 42 So.3d 1291, 1293 (Ala.Civ.App.2010) ('In D.P. [v. Limestone County Department of Human Resources, 28 So.3d 759, 764 (Ala.Civ.App.2009),] this court held that a permanency order relieving DHR of the duty to use reasonable efforts to reunite a parent with a dependent child constitutes a final judgment that will support an appeal.’)', and D.P. v. Limestone County Dep’t of Human Res., 28 So.3d 759, 764 (Ala.Civ.App.2009) (’We hold that it is immaterial, for purposes of finality and appealability, that a juvenile court's order emanates from the permanency-plan hearing rather than from the periodic review of a dependency determination. If the order addresses crucial issues that could result in depriving a parent of the fundamental right to the care and custody of his or her child, whether immediately or in the future, the order is an appealable order.’).’’
(Emphasis added.)
Because such adjudications were not made in the present case, we also need not decide today the "debate” between Judge Moore, the author of the Court of Civil Appeals' opinion, and Presiding Judge Thompson as to the further issue whether these adjudications would have a formal collateral estoppel effect in any subsequent termination-of-parental-rights proceeding in which the trial court must decide whether there are at that time grounds for termination and/or "viable alternatives” to termination. As explained by the Court of Civil Appeals, the approval by the trial court of DHR's new plan to pursue termination of the mother’s parental rights and an adoption of the children is not itself, at least not as presented in this case, an appealable adjudication of the mother’s substantive rights.

.See D.V. v. Colbert Cnty. Dep't of Human Res., 121 So.3d 370 (Ala.Civ.App.2012) (noting that a termination of parental rights must be based on the existence of conditions or conduct relating to a parent's inability or unwillingness to care for his or her children at the time of the termination); D.O. v. Calhoun Cnty. Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003) (to same effect).

. By contrast, the juvenile court specifically stated in the January 3, 2012, orders that "reasonable efforts to reunite the child with the father ... shall no longer be required.”

. In so doing, I do not wish to be understood as agreeing with all the views expressed by Judge Thompson in his dissenting opinion.